IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Civil No. 1:20CV00312 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| $6,140.00 in U.S. CURRENCY, | : | |
| Defendant. | : | |

## **VERIFIED COMPLAINT OF FORFEITURE**

NOW COMES Plaintiff, the United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and respectfully states as follows:

1. This is a civil action *in rem* brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of the aforesaid defendant property which constitutes or was derived from proceeds traceable to an offense constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense, specifically violations of 18 U.S.C. §§ 1955, 1956, and/or 1957.

2. The defendant property is $6,140.00 in U.S. Currency, which was seized on December 9, 2019, in Thomasville, North Carolina, while located within the jurisdiction of this Court, and has been deposited to the U.S. Customs and Border Protection Customs Suspense Account.

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United

States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1) and 1395, because the defendant property was seized while located in the jurisdiction of this Court, or one or more of the acts giving rise to forfeiture occurred in this district.

5. Upon the filing of this complaint, Plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which Plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

6. The facts and circumstances supporting the seizure and forfeiture of the defendant property are contained in Exhibit A, attached hereto and wholly incorporated herein by reference.

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

This the 6th day of April, 2020.

                Respectfully submitted,

                MATTHEW G.T. MARTIN
                United States Attorney

                /s/ Lynne P. Klauer
                Lynne P. Klauer
                Assistant United States Attorney
                NCSB #13815
                101 S. Edgeworth Street, 4th Floor
                Greensboro, NC 27401
                Phone: (336) 333-5351
                Email: lynne.klauer@usdoj.gov

# VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America, that the contents of the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

_____
Charles B. Parker
Special Agent
U.S. Immigration and Customs Enforcement
Homeland Security Investigations

# DECLARATION

I, Charles B. Parker, hereby state, pursuant to 28 U.S.C. § 1746, under penalty of perjury and pursuant to the laws of the United States, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Special Agent (SA) of the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and have been so employed since 2019. I am currently assigned to the HSI Winston-Salem Office, where my duties include, among others, investigating violations of Titles 8, 18, 19, 21 and 31 of the United States Code (U.S.C.). Prior to reporting for assignment, I attended training at the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia, where I received instruction in Federal criminal statutes, search, seizure and arrest authority, and many other facets of federal law enforcement.

2. Before joining HSI, I was a Special Agent of the United States Secret Service (USSS) where I was assigned to the USSS Boston Office for four years. My duties included investigating financial crimes and computer-based attacks on the nation's financial, banking, and telecommunication infrastructures. Prior to the USSS, I was a police officer in Greensboro, North Carolina for 10 years. During that time, I drafted over 50 search warrants and participated in over 500 felony investigations. These investigations resulted in arrests, seizures, interviews, and prosecutions in local, state, and federal courts.

3. This Declaration is made in support of a Verified Complaint for Forfeiture of $6,140.00 in U.S. Currency seized from H&L Financial in Thomasville, North Carolina on December 12, 2019.

GOVERNMENT EXHIBIT A

4. The facts and circumstances set forth in this declaration are based upon the declarant's personal knowledge of the investigation as well as information provided to me by other law enforcement officers involved in this investigation.

## The Investigation

5. Homeland Security Investigations (HSI) Winston-Salem conducted a joint investigation with Davidson County Sheriff's Office (DCSO) and North Carolina Alcohol Law Enforcement (NCALE) with state search and seizure warrants involving illegal video gaming-gambling machines (VGMs) at The Fish House Social Club, located at 1569 National Hwy., Thomasville, NC.

6. NCALE, in conjunction with DCSO, conducted a series of undercover operations which established probable cause for violations of North Carolina General Statutes (NCGS) NCGS § 14-292, gambling devices; NCGS §§ 14-306/14-306.1A, slot machines; and NCGS §§14-306.3/14-306.4, server-based gaming machines. Specifically, NCALE noted "fish table" gaming machines which are disguised as arcade games but operate as illegal slot machines because the game is not operated or played for amusement. Furthermore, NCALE found the VGMs awarded U.S. currency for credits won, which is a violation of NCGS § 14-306(b)(2).

## Undercover Operations

7. On November 13, 2019, NCALE SA Hinson entered the Fish House Social Club in an undercover capacity and observed approximately 71 desktop style VGMs.

2

NCALE SA Hinson also observed an ATM being used to withdraw cash by an unknown male subject. NCALE SA Hinson played the fish table style "Monsters of the Deep." NCALE SA Hinson concluded that the VGM is disguised as an arcade game but it operates as an illegal slot machine because this game is not operated or played for amusement. U.S. currency is awarded for credits won, which is a violation of NCGS § 14-306(b)(2). Furthermore, NCALE SA Hinson found the VGM allowed up to 75 credits to be bet during each single play; a violation of NCGS § 14-306(b)(2), which only allows eight credits to be played at one time.

8. On November 13, 2019, NCALE SA Nutt also entered the Fish House Social Club in an undercover capacity. NCALE SA Nutt went to the point of sale counter and spoke to an unidentified female employee who issued SA Nutt $60.00 worth of credits to be played on Sweepstakes Aloha software VGMs. NCALE SA Nutt went to an Aloha software Sweepstakes terminal and noted there were approximately 23 different games to play. All of the games were slot games utilizing entertaining displays which included three-liner and five-reel slot games.

9. After a series of plays, NCALE SA Nutt chose to end the game play and cash out with a valued amount of $210.36. NCALE SA Nutt had to copy a pattern to claim her cash out prize. NCALE SA Nutt found there is no skill or dexterity involved and it was impossible to fail. NCALE SA Nutt found the VGM to be in violation of NCGS § 14-306.4 which makes it unlawful to promote or conduct sweepstakes through the use of an entertaining display, including the entry process or the reveal of a prize.

10. On November 20, 2019, NCALE SA Hinson returned to the Fish House Social Club in an undercover capacity. NCALE SA Hinson played the cabinet style VGM operating software Sweet Road Freedom. This VGM had several different types of slot games which were not dependent upon skill or dexterity of the player but based upon the random or chance matching of different pictures, words, numbers or symbols. Through a series of winning and losing games, the VGM displayed that NCALE SA Hinson had won a total of $25.00. NCALE SA Hinson retrieved a cash out receipt and redeemed it at the point of sale counter, where a female employee identified as Alyxus gave NCALE SA Hinson $25.00 in U.S. currency. NCALE SA Hinson concluded the gaming machine is disguised as an arcade game but operates as an illegal slot machine because it is not operated or played for amusement. U.S. currency is awarded for credits won in violation of NCGS § 14-306 (b)(2).

11. On November 20, 2019, NCALE SA Singleton entered the Fish House Social Club in an undercover capacity. NCALE SA Singleton went to the point of sale counter and spoke to employee Alyxus. NCALE SA Singleton informed Alyxus that she wanted to play the Frontier gaming machines and she then exchanged U.S. Currency for $60.00 worth of credits. NCALE SA Singleton then went to a "Fuse 8" VGM and signed in with the information provided by employee Alyxus. NCALE SA Singleton observed it was a Sweepstakes software-based VGM which hosted several different video slot games available to play.

12. NCALE SA Singleton chose the 25-liner game, "Dublin Wheel." NCALE SA Singleton noted the game featured a virtual reel which only existed within the computer memory and programmed by the game's designer. Further, there is no skill or dexterity involved to play the slot game because the symbols are matched randomly or by chance. Through a series of winning and losing games, the VGM displayed that NCALE SA Singleton had won $50.00.

13. NCALE SA Singleton was required to play the "wheel skill game" in order to cash out. The VGM showed a wheel where different numbers cycle through and the player must pick the correct winning number. NCALE SA Singleton found the game to be trivial and impossible to lose and required no dexterity or skill. NCALE SA Singleton returned to the point of sale area to cash out and was given $50.00 in U.S. currency by employee Alyxus. NCALE SA Singleton found that the VGM was an illegal slot machine based on NCGS § 14-306.1A and a violation of gambling under NCGS § 14-292.

### Search Warrant

14. On December 9, 2019, DCSO Det. C. Bryant appeared before Judge Hamilton of the North Carolina Davidson County Superior Court and obtained a search warrant for the Fish House Social Club based on probable cause established by NCALE undercover operations.

15. Continuing on this date, HSI Winston Salem, NCALE, and DCSO executed the search warrant at The Fish House Social Club. The establishment was open for regular

5

business and there were several patrons inside playing the VGMs; DCSO documented 8 individuals at the time of the search warrant.

16. NCALE and DCSO interviewed 3 employees who were working at the time of the search warrant. The interview statements referenced in this declaration are not intended to be a verbatim account of the interviews or report of interviews but a general overview of each interview.

## Interviews

17. DCSO Det. Parks interviewed employee Miteshkumar Patel. Mr. Patel's interview included statements that he worked the fish room and his job was to pay people when they win money. Mr. Patel stated the fish games are games of chance and it is like a casino and people take a chance.

18. NCALE SAC Poole interviewed employee Barvara Toscano. Mrs. Toscano's interview included statements that she worked the point of sale area and makes the cash payouts for the cabinet style video slot games, Aloha video slot games, Frontier video slot games, and Fuze 8 video slot games. Mrs. Toscano stated all gaming proceeds are cash and it was an all cash business.

19. NCALE SAC Poole also interviewed manager Kimberly Cranford. Mrs. Cranford's interview included statements that she is the manager of The Fish House Social Club. Mrs. Cranford stated her salary is paid in cash from proceeds of the business. Mrs. Cranford stated she handles day to day operations of the business and pays the bills. Mrs.

Cranford stated the gaming machine proceeds were approximately $10,000 per day after all cash payouts, rent, utilities and employee salaries were paid.

20. Mrs. Cranford stated she has not paid taxes on the last six months of her salary from working at The Fish House Social Club. Mrs. Cranford also stated eight employees work at the gaming location and identified a posted sign in the point of sale area which reflected the employee names and phone numbers. The names on the sign were Kim, Boss, Dalina, Pumpkin, Cody, Keta, Mel, Summer, Alyxis, Barbie, Shay, Fuze Tech Jimmy, Will Frontier. A posted note below the sign showed ATM GUY – Steve 704-577-0467.

21. Mrs. Cranford stated there were ATMs on site for the customers to use and most customers use them to withdraw money to play the gaming machines. Mrs. Cranford estimated 99% of the ATM usage was for cash to play the gaming machines.

### Seizures

22. DCSO seized 63 sweepstakes desktop computers, 12 stand up cabinet machines, and 14 motherboards from fish tables and other VGMs which could not be removed from the establishment. DCSO also seized $24,621.00 from the point of sale office and VGMs.

23. Furthermore, DCSO seized $6,140.00 from the on-site ATMs. DCSO contacted John Page with H&L Financial Inc. during the search warrant. Mr. Page responded and aided with the ATM seizures. Mr. Page opened the ATMs and relinquished the $6,140.00 to DCSO.

24. HSI was present and aided during the entirety of the search warrant at the Fish House Social Club. On December 10, 2019, the seized currency was converted to cashier's check made payable to U.S. Customs and Border Protection. On December 17, 2019, your declarant took custody of the cashier's check and deposited the check into the Treasury Suspense Account.

25. CBP initiated administrative forfeiture proceedings of the $6,140.00 and subsequently sent notices to all known parties with possible interest in property. On January 8, 2020, CBP received a claim to the currency from Johnny Heath Page regarding the ATM seizure of $6,140.00.

## **CONCLUSION**

26. Based on the foregoing, there is probable cause to believe that $6,140.00 in U.S. Currency seized from H&L Financial on December 9, 2019 is subject to seizure and forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C).

This the  6  day of April, 2020.

_____
Chares B. Parker
Special Agent
U.S. Immigration and Customs Enforcement
Homeland Security Investigations

8